IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CV NO 10-00356 DAE-LEK |
| | ) | |
| SEAN RYAN O'KELLEY, | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| COUNTRYWIDE HOME LOANS, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JONATHAN ERIC WILKERSON; | ) | |
| SEAN RYAN O'KELLEY; ELAINE | ) | |
| HORTIZUELA GUERRERO | ) | |
| O'KELLEY; PALEHUA | ) | |
| COMMUNITY ASSOCIATION, | ) | |
| Defendants. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

DETAILED ORDER DENYING APPELLANTS SEAN RYAN O'KELLEY AND
ELAINE HORTIZUELA GUERRERO O'KELLEY'S EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Appellants' motion and the

supporting and opposing memoranda, the Court **DENIES** Appellants' Emergency

Motion for Temporary Restraining Order.  (Doc. # 13.)

<u>BACKGROUND</u>

This case has a long history in this Court and the United States Bankruptcy Court.  Much of the case history has been aptly described in a previous order by Judge Seabright and is repeated below without reference to citation and with this Court's current designation of the parties substituted.  (<u>See</u> <u>Countrywide Home Loans, Inc. v. Wilkerson et al.</u>, Cv. No. 09-00360 JMS/KSC Order Affirming Bankruptcy Court's Orders (1) Denying Defendants' [Appellants'] Motion to Dismiss; (2) Granting Plaintiff's [Countrywide's] Motion for Summary Judgment; and (3) Denying Defendants' [Appellants'] Motion for Reconsideration "Seabright Order," Doc. # 31.)

I.      <u>Factual Background</u>

    A.      The Mortgages

        On October 2004, Appellants Sean Ryan O'Kelley and Elaine Hortizuela ("Appellants") and Jonathan Eric Wilkerson ("Wilkerson") offered to purchase the property located at 92-925 Panana Street, Kapolei, Hawaii 96707 (the "Panana Property") for $417,000, which was accepted by the seller.  Appellants had poor credit scores and Wilkerson therefore agreed to help Appellants purchase the Panana Property by using his good credit to secure mortgages on the property in his name.  Wilkerson and Appellants agreed that Appellants would make the

2

down payment and monthly payments on the Panana Property and ultimately live

on the Panana Property, while Wilkerson would have a 10% interest in the house.

Wilkerson obtained a first mortgage loan in the amount of $333,600 from

Countrywide, secured by a mortgage on the Panana Property that was executed by

Wilkerson and Appellants.  Wilkerson obtained a second home equity line of credit

("HELOC") in the amount of $41,700 from Countrywide, secured by a second

mortgage on the Panana Property executed by Wilkerson and Appellants.  Both of

the mortgages were in favor of Mortgage Electronic Registration Systems, Inc.

("MERS"), acting solely as a nominee for Countrywide, its successors, and

assigns.

      B.      Ownership and Servicing of the Mortgages

      Appellee Countrywide Home Loans, Inc. ("Countrywide") is the

owner of the second mortgage loan.  Countrywide sold the first mortgage loan,

however, to Park Granada, who then sold it to Bank One, who finally sold it to

Federal National Mortgage Association ("Fannie Mae").  Accordingly, Fannie Mae

presently owns the first mortgage loan.  At the time the first mortgage loan was

sold to Fannie Mae, Countrywide Home Loans Servicing, LP, a Countrywide-

affiliated entity ("CHLS"), was the servicer of all Fannie Mae loans of record

pursuant to a Mortgage Selling and Servicing Contract.  CHLS in turn had an

agreement with Countrywide for Countrywide to perform the servicing functions

for mortgage loans—including handling mortgage payments from mortgagors and,

when necessary, filing proof of claim forms and bringing foreclosure actions in its

own name for mortgage loans in default.  Fannie Mae requires that when a servicer

(or subservicer) forecloses on a mortgage, the servicer must convey title of the

property to Fannie Mae once the servicer acquires the property.  Fannie Mae

further generally requires servicers to initiate legal proceedings: (1) in the

servicer's name if the servicer is the mortgagee of record; (2) in Fannie Mae's

name if Fannie Mae is the mortgagee of record, or (3) in the servicer's name if

MERS is the mortgagee of record.

      C.     Default on the Mortgage Loans

          The first mortgage loan required Wilkerson to make monthly principal

and interest payments in the amount of $1,715.17 per month, while the second

mortgage loan required Wilkerson to pay a minimum of $177.07 per month.

Starting in May 2005, payments on the loans became sporadic, resulting in

Countrywide issuing several Notice of Default and Acceleration letters on the first

mortgage loan and issuing an Attorney Demand Letter on the second mortgage

loan.  The last payment Countrywide ever received on the first mortgage loan was

on July 21, 2006, and the last payment received on the second mortgage loan was

on April 12, 2006.

II.     Procedural Background

On February 22, 2007, Countrywide filed a foreclosure action on the

Panana Property in Hawaii Circuit Court.   On April 9, 2007, Appellants filed an

Answer and Counterclaim.   In July 2008, Countrywide filed a motion for summary

judgment seeking judgment that the loans are in default and a decree of foreclosure

on the mortgages, as well as summary judgment on Appellants' counterclaims.

Sean O'Kelley subsequently filed for bankruptcy and removed the state foreclosure

action to the Hawaii bankruptcy court.

In bankruptcy court, three days before the hearing on the motion for

summary judgment, Appellants filed a motion to dismiss arguing that Countrywide

is not the real party in interest.   During the hearing on the motion for summary

judgment, the bankruptcy court orally granted the motion for summary judgment

but declined to enter a written order until after it determined the motion to dismiss.

The bankruptcy court ultimately denied Appellants' motion to dismiss and entered

a written order granting Countrywide's motion for summary judgment.   Judgment

was entered on July 15, 2009.   Appellants filed a Motion for Reconsideration of

the order granting summary judgment and the final judgment, which the

bankruptcy court denied on July 24, 2009.

On August 6, 2009, Appellants appealed the bankruptcy court's

decision on the motion for summary judgment, motion to dismiss and motion for

reconsideration.  Judge Seabright affirmed the bankruptcy court on all matters.

(See Seabright Order.)  Subsequently, Appellants filed a motion in the bankruptcy

court to vacate the bankruptcy judgment affirmed by Judge Seabright and a motion

to disqualify Judge Faris.  (See Opp'n, Exs. C & D, respectively.)  The bankruptcy

court denied both motions.  (Id.)  Appellants then moved to stay the proceedings

pending Appellants' appeal of the motion to vacate and motion to disqualify to this

Court.  (See id., Ex. E.)  The bankruptcy court denied Appellants' stay motion.

(See id., Ex. F.)  Appellants did not appeal the bankruptcy court's denial of their

stay motion.

On June 24, 2010, the bankruptcy court issued an order granting

Countrywide's motion for confirmation of sale, for deficiency judgment, for writ

of possession and cancellation of notice pendency of action ("Confirmation

Order").  (See id., Ex. G.)  Appellants did not appeal the Confirmation Order,

which entitled Countrywide or its nominee to "immediate and exclusive possession

of the" Property upon recordation of the documents conveying the Property to

Countrywide or its nominee.  (<u>Id.</u> at 5 ¶ 6.)  On July 29, 2010, a Commissioner's Deed was recorded and the Property was conveyed to Fannie Mae.  (<u>Id.</u>, Ex. J.)

Also on June 24, 2010, the bankruptcy court issued a Judgment for Possession by which Appellants were "ejected from and permanently enjoined and restrained from entering upon or attempting to enter upon the land and improvements at" the Property.  (<u>Id.</u>, Ex. H.)  The bankruptcy court additionally issued a writ of possession commanding the Director of Public Safety, his/her deputy or any police officer to remove the Appellants from the Property.  (<u>Id.</u>, Ex. I.)  Appellants did not appeal the Judgment for Possession or the Writ of Possession.

On June 16, 2010, Appellants filed an emergency motion for stay pending appeal with the United States Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") and Countrywide filed a statement of election to the district court. (Doc. # 1, Order Transferring Appeal to District Court.)   Accordingly, the BAP transferred the appeal to this Court.  (<u>Id.</u>)  On July 29, 2010, Appellants filed their opening brief with this Court.  (Doc. # 8.)  On August 16, 2010, Countrywide filed its brief in opposition.  (Doc. # 9.)  On September 2, 2010, Appellants filed their response brief.  (Doc. # 11.)  Oral arguments were set before this Court on October 22, 2010.  (Doc. # 12.)

On October 4, 2010, Appellants filed the instant Emergency Motion for Temporary Restraining Order ("TRO"). ("TRO," Doc. # 13.) The same day, this Court ordered Countrywide to respond to Appellant's TRO. (Doc. # 14.) On October 5, 2010, Countrywide filed an Opposition to Appellant's TRO. ("Opp'n, Doc. # 15.) On October 6, 2010, this Court issued an Order denying Appellants' TRO. (Doc. # 16.) This detailed order follows.

<u>STANDARD OF REVIEW</u>

"A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." Fed. R. Bankr. P. 8005; <u>see</u> <u>In re Wymer</u>, 5 B.R. 802, 807 (B.A.P. 9th Cir. 1980). A notice of appeal shall be filed with the bankruptcy court "within 14 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002.

The bankruptcy appellate panel, or the district court sitting in its stead, will not entertain a request for a stay of judgment pending appeal unless it is first demonstrated that trial judge is unavailable or that request was denied by trial judge. <u>See</u> <u>In re Wymer</u>, 5 B.R. at 807-08; Fed. R. Bankr. P. 8005 ("A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the

motion shall show why the relief, modification, or termination was not obtained

from the bankruptcy judge.").  Only if trial judge is unavailable does the appellate

tribunal exercise its own discretion; in other instances, such as where trial court has

denied stay, appellate panel simply determines whether trial court abused its

discretion.  Id.

Review of a trial court's denial of stay is for abuse of discretion.  In re

Wymer, 5 B.R. at 807-08 ("It is just as important to the properly functioning

bankruptcy court that the trial judge's rulings on stays pending appeal be disturbed

only in the event of error or abuse of discretion); see also In re North Plaza, LLC,

395 B.R. 113, 119 (S.D. Cal. 2008) ("Where the bankruptcy court has already

denied a stay under Federal Rule of Bankruptcy Procedure 8005, the appellate

court's review is limited to a simple determination of whether the bankruptcy court

abused its discretion.") (citation omitted).

The abuse of discretion standard on review of the bankruptcy court's

order denying a stay encompasses a de novo review of the law and a clearly

erroneous review of the facts with respect to the underlying issues.  In re Irwin,

338 B.R. 839, 848 (E.D. Cal. 2006) ("Discretion will be found to have been abused

when the judicial action is arbitrary, fanciful or unreasonable which is another way

9

of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.").

"An appellant seeking a discretionary stay pending appeal under Bankruptcy Rule 8005 must prove: (1) appellant is likely to succeed on the merits of the appeal; (2) appellant will suffer irreparable injury; (3) no substantial harm will come to appellee; and (4) the stay will do no harm to the public interest." In re Irwin, 338 B.R. at 843; see also Fed. R. Bankr. P. 7062 (applying Fed. R. Civil P. 62 to adversary proceedings).  A discretionary stay "should be sparingly employed and reserved for the exceptional situation."  In re Wymer, 5 B.R. at 806 (citation omitted).

DISCUSSION

Appellants filed the instant TRO with this Court due to a notice that was allegedly posted on the door of the Panana Property on October 1, 2010 that provided Appellants with six (6) days in which to remove their belongings and vacate the premises.  (TRO at 2.)  Here, Appellants' original Motion for Stay was previously denied by the bankruptcy court on June 18, 2010 and was never appealed.  (Opp'n, Ex. F.)  Accordingly, review of the bankruptcy court's stay order is not timely.  See Fed. R. Bankr. P. 8002.  As to Appellants' instant TRO, Appellants have failed to move in the first instance for an emergency stay in the

10

bankruptcy court and have failed to show that the bankruptcy judge was

unavailable or that the instant request was denied.   Accordingly, Appellants are

procedurally barred from bringing the instant TRO in front of this Court.

     Nevertheless, review of the TRO demonstrates that Appellants' basis

for emergency relief is meritless.  Due to the procedural history of this case, the

bankruptcy court's sound analysis in its order denying Appellants' original stay

request, and the claims raised on appeal, the Court finds that Appellants' have

failed to show a likelihood of success on the merits.  See In re North Plaza, 395

B.R. at 121 (to demonstrate a likelihood of success, the appellant must "raise

questions going to the merits so serious, substantial, difficult and doubtful as to

make them a fair ground for litigation and thus for more deliberate inquiry.")

(citation omitted).  Additionally, Appellants cannot demonstrate irreparable harm

insomuch as the Property now belongs to Fannie Mae (see Opp'n, Ex. J), and

Appellants are unlikely to overturn this finding on appeal.  Moreover, the balance

of hardships weighs in favor of Countrywide due to the fact that Appellants have

failed to make payments on the underlying loan obligations for over four years and

have apparently already moved out of the Property.  (See Opp'n, Declaration of

Jeri Parker ¶¶ 8-10.)  See In re Kent, 145 B.R. 843, 844 (Bankr. E.D. Va. 1991)

("These creditors have been forced to sit and wait for eighteen months while real

estate taxes, interest, penalties and fees have continued to accrue to their detriment. Any further delay would increase the already substantial harm that has been suffered.")  Failure to satisfy any one of these elements alone would "doom" Appellant's TRO.  Irwin, 338 B.R. at 843 (citation omitted).   Accordingly, the Court DENIES Appellants' TRO.

CONCLUSION

For all the reasons stated above, the Court **DENIES** Appellants' Emergency Motion for Temporary Restraining Order.  (Doc. # 13.)  Additionally, the Court **VACATES** the October 22, 2010 hearing and will decide Appellants' appeal on the briefings submitted by the parties.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, October 8, 2010.



_____
David Alan Ezra
United States District Judge

Countrywide Home Loans, Inc. v. Wilkerson et al., Cv. No. 10-00356 DAE-LEK; DETAILED ORDER DENYING SEAN RYAN O'KELLEY AND ELAINE HORTIZUELA GUERRERO O'KELLEY'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER